[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 42 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 43 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 44 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 45 
On reading the contract of the parties, it appears upon its face to be expressed in so short terms in respect to the price as to be unintelligible. The instrument of payment is expressed, viz., Fearing Hall's acceptance, and the figure and abbreviation, "6 ms.," even without evidence to show that "ms." is the ordinary contraction for months, are probably, and with that evidence are certainly, sufficient to enable a court to say that the acceptance was to be at 6 months. That it was to be delivered in payment upon the delivery of the property purchased, results from the absence of any contrary stipulation, that being the rule of law as to time of payment. In the contract, this expression, fixing the time which the paper to be given in payment shall have to run, is preceded by the figures 12 1-4, without any marks of notation or other signs which can enable a court to say what, in reference to the contract, is the signification which the parties attached to them and intended to convey by their use. The figures read "twelve and a quarter," and occurring where they do, every term of the contract, except the price, being ascertained, a court *Page 46 
is bound to conclude that they relate to the price, although it is at the same time unable to declare, from the writing itself, either in what denomination of money the price is expressed, or for what quantity of the article the named price is to be the equivalent. In this state of the case parol evidence was received that madder, the subject of the contract, is usually sold by the pound and at so many cents per pound, and no evidence was offered to show that it was ever sold in any other way. It was also shown, that among merchants these figures, standing as they do in this contract, would be understood to express, in cents, the rate per pound at which the madder had been sold. The first question in the case relates to the admissibility of this evidence. The legal tendency of the evidence is to show that among dealers in the article in question, this contract, although so elliptical in its expressions, would convey a definite meaning. Evidence is always admissible to explain the meaning of terms used in any particular trade or occupation, when their meaning becomes material in order to construe a contract; and the principle on which the rule is founded, extends to forms of expression commonly used in any particular business as well as to single words. In both cases the evidence is admitted as a means of enabling the court to declare what the language of the contract did actually express to persons standing in the position of the contracting parties, and so to ascertain what it does express to the court, which, for this purpose, is bound to place itself in their position. I am not aware of any case in which the precise point in this case has been adjudged. In Cooper v. Smith (15East, 103), the memorandum on which the suit was brought contained merely the vendee's name, and the expression, "40 of 3 — 58s." This was explained by evidence to mean forty sacks of flour, called thirds, at 58 shillings per sack. No question was, however, made upon it, although the case turned on the sufficiency of the memorandum, which, being unsigned, was held to be insufficient. Upon principle, *Page 47 
however, the evidence was admissible; for it would be intolerable that a writing which, to the parties and to persons standing in their situation, contained language sufficient to express their meaning, should fail of effect. (Wigram on Ex. Ev., 174, 175; 1Greenleaf Ev., §§ 282, 288, 292, 298.)
The next question to be considered relates to the exclusion of questions offered to be put by the defendant as bearing upon the measure of damages. The rule of damages laid down in the charge was, that the plaintiffs were entitled to the difference between the market value of the article contracted for, on the day it should have been delivered, and the price which the plaintiffs agreed to pay for it. To this there was no exception, and it is not now affirmed to be incorrect.
The questions excluded were put in various forms, but their admissibility is urged upon the ground that, in ascertaining the market value of the madder, the jury were to consider how the plaintiffs could have disposed of the madder in question if it had been delivered to them Accordingly, inquiries were made as to the probable effect on the market price of an additional supply of 150 casks; whether a quantity of 150 tons was not a large supply to the market, in reference to the amount ordinarily in market; and whether the same quantity would not be a very large supply for a single printing works. The evident object of all these inquiries was to show that, if the defendant had performed, and the plaintiffs had desired to sell the whole quantity, the market price would have been lowered by throwing so large a quantity at once upon the market. A sufficient answer to all these exceptions is, that they are founded upon an attempt to substitute a hypothetical market value for the actual market value. They call upon the jury to speculate as to the consequences which would have resulted to the plaintiffs if the defendant had performed his contract. The rule of damages was correctly laid down by *Page 48 
the court (Clark v. Pinney, 7 Cow., 681; Dey v. Dox, 9Wend., 129; Davis v. Shields, 24 Wend., 322); and the market value of the article on the day of delivery, which that rule fixes as the test, requires an investigation of the actual condition of the market, and does not warrant the consideration of the conjectural consequences of a state of things which did not exist.
The principle on which the rule rests is, the indemnification of the injured party for the injury which he has sustained. In a suit by the vendor against the vendee for non-acceptance of the articles sold, in order to give him a complete indemnity, he must recover the difference between the agreed price and that at which he could sell on the day when the vendee was bound to receive and pay for the thing bought. So, on the other hand, in a suit by the vendee against the vendor for non-delivery, his complete indemnity is to receive that sum which, with the price he had agreed to pay, would enable him to buy the article which the vendor had failed to deliver. The value in the market on the day forms the readiest and most direct method of ascertaining the measure of this indemnity in both cases, and accordingly, where a market value for the article exists, the law has adopted that standard.
Some other rulings of the court, in respect to the rejection of questions put by the defendant's counsel, are to be considered. The first was an inquiry as to the market value of madder on the day when, by the contract, it should have been delivered, in as large a quantity as 150 casks. This inquiry was rejected, unless it was first shown that there was a market value for the article in such quantities. The limitation thus imposed by the court was correct, for otherwise the question only called upon the witness to speculate upon the probable consequences of attempting to buy or sell such a quantity upon the day when the delivery ought to have been made. If admitted, it would have brought to the consideration of the jury the same question *Page 49 
we have already concluded they were not to pass upon. It moreover called for no matter of fact within his knowledge, but only for his judgment upon a question as to which, if a judgment was necessary to be formed by any body, the jury were the proper tribunal and were competent to form it. Another question alluded to was asked in these terms; "What is the difference in the price of madder on sales as large as 150 tons, and sales of two, three or five tons?" This question called upon the witness for some average estimate to be formed by him as to the difference in price spoken of, and not for facts lying within his knowledge, and was on that account properly excluded. Nor do I think it was proper, by way of founding an argument upon the answer sought for, that the plaintiffs should be limited to such a price as could be procured for the whole quantity of 150 tons in a single sale. No facts were in evidence to warrant the supposition that the plaintiffs could have procured the quantity which the defendant had agreed to deliver to them, by a single purchase. In the absence of such facts, at least, the inquiry was in that aspect irrelevant. In every other aspect it only presented the same question which, upon this branch of the case, was first considered. Another question arises upon the exclusion of an inquiry by the defendant's counsel as to the range of the market value of madder, for a period of three months before and after the day when the delivery was due. As no sales were shown on the precise day, it was necessary to have recourse to sales before and after the day, and for that inquiry a reasonable range in point of time was allowable; but, in some degree, the extent of time which shall be included in such an inquiry must rest in the discretion of the court which tries the cause. Sales were shown in this case on the 10th and 15th of April. From a subsequent alteration in the price, no legitimate inference could be drawn as to the market value, prior to those sales; and the question put was too broad in its terms and embraced too great a period of time to entitle *Page 50 
the defendant to insist, as matter of right, upon its being allowed to be put.
Another ground of objection to the judgment is, that the general term of the common pleas, having decided that the judge at the trial erred in instructing the jury that interest was to be recovered as part of the damages upon the amount of difference between the contract price and the market value, did not grant a new trial absolutely, but only in the event that the plaintiffs should refuse to strike out the amount of interest which had been separately assessed by the jury, and in case of their consent denied a new trial and awarded costs to them.
I think the decision at the trial was correct upon principle. Interest is a necessary item in the estimate of damages in this class of cases. The party is entitled on the day of performance to the property agreed to be delivered; if it is not delivered, the law gives, as the measure of compensation then due, the difference between the contract and market prices. If he is not also entitled to interest from that time as matter of law, this contradictory result follows, that while an indemnity is professedly given, the law adopts such a mode of ascertaining its amount, that the longer a party is delayed in obtaining it, the greater shall its inadequacy become. It is however conceded to be law, that in these cases the jury may give interest by way of damages, in their discretion. Now, in all cases, unless this be an exception, the measure of damages in an action upon a contract relating to money or property is a question of law, and does not at all rest in the discretion of the jury. If the giving or refusing interest rests in discretion, the law, to be consistent, should furnish some legitimate means of influencing its exercise by evidence, as by showing that the party in fault has failed to perform, either wilfully or by mere accident, and without any moral misconduct. All such considerations are constantly excluded from a jury, and they are properly told that in such an action their duty is to inquire whether a *Page 51 
breach of the contract has happened, not what motives induced the breach.
That by law a party is to have the difference between the contract price and the market price, in order that he may be indemnified and because that rule affords the measure of his injury when it occurred; that he may not as matter of law recover interest, which is necessary to a complete indemnity; that nevertheless the jury may, in their discretion, give him a complete indemnity, by including the amount of interest in their estimate of his damages; but that he may not give any evidence to influence their discretion, presents a series of propositions, some of which cannot be law. The case of Van Rensselaer v.Jewett (2 Comst., 141) establishes a principle broad enough to include this case, and has freed the law from this as well as other apparent inconsistencies in which it was supposed to have become involved. The right to interest, in actions upon contract, depends not upon discretion but upon legal right, and in actions like the present is as much a part of the indemnity to which the party is entitled as the difference between the market value and the contract price. If, therefore, the general term committed any error, it is not one of which the defendant can complain, as it was in his favor, and deprived the plaintiffs of part of the relief to which they were by law entitled.
The judgment should be affirmed.
All the Judges concurred in the foregoing as to explaining the written contract by parol evidence, except GARDINER, C.J.
They all concurred, also, in that part of the opinion as to the right to recover interest, except SELDEN, J.
DENIO, RUGGLES, EDWARDS and ALLEN, Js., concurred in the result of the opinion, that no evidence as to the market value of madder at the time for its delivery was improperly excluded. *Page 52 
GARDINER, C.J., PARKER and SELDEN, Js., were of opinion that evidence touching the market value of the madder was erroneously excluded, and on this ground were in favor of reversing the judgment.
Judgment affirmed.