Calvin L. Stowell, Respondent, *v.* The Greenwich Insurance Company of the City of New York, Appellant.

Evidence — Parol Evidence Inadmissible to Contradict Written Contract. Where a written contract has been made between an insurance company and its general agent, covering the general subject of the selection, appointment and removal of sub-agents, his compensation and the termination of the contract, with an express provision that such termination, no matter which one of the parties brought it about, "should be without any liability on the part of the insurance company beyond the commissions actually earned at the close of the said agency;" and such contract has been terminated by the company, the general agent cannot, in an action for damages against the company, on the ground that it is collateral and suppletory to the written contract, prove an oral agreement alleged to have been made prior to and at the time of the execution of the written contract, and imposing a liability upon the company for renewing policies issued through sub-agents obtained by him and for not discontinuing their agencies, since such agreement not only varies the written contract, but explicitly contradicts that portion of it which declares that upon its termination there shall be no liability on the part of the company except for commissions earned, and a judgment based upon such oral agreement must be reversed.

*Stowell* v. *Greenwich Ins. Co.*, 20 App. Div. 188, reversed.

(Argued April 20, 1900; decided June 5, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered August 9, 1897, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

In the closing days of the year 1887 the plaintiff and Mason A. Stone, then the secretary but now the president of the defendant, entered into negotiations looking to the appointment of the plaintiff as general agent for the defendant to effect insurance in the states of New York and Pennsylvania, or parts thereof, and as a result an agreement was reached which was reduced to writing and duly executed on the last day of the year 1887 ; the agreement reads as follows : " Article I. This agreement, made the thirty-first day of December, A. D. 1887, between The Greenwich Insurance Company of the City of New York of the first part and Calvin L. Stowell of Rochester, N. Y., of the second part, witnesseth : Article II. The said The Greenwich Insurance Company of the City of New York hereby appoints the above-named Calvin L. Stowell as general agent for the said company to effect insurance, and with the authority to appoint sub-agents subject to approval of and to be commissioned by the said The Greenwich Insurance Company in and for the states of New York and Pennsylvania, or parts thereof, and such other territory as may at any time be designated by said company, upon the following terms and conditions, to wit : Article III. The said Calvin L. Stowell hereby agrees to travel and appoint said sub-agents in person, or by an experienced representative, and use due diligence in enforcing the said The Greenwich Insurance Company's instructions in the territory above named.   Article IV. The said Calvin L. Stowell hereby further agrees to pay any and all expenses incurred in the appointment of said agents, and also for the inspection of all risks and all special work required in the prosecution of said business, also for the services of special agents and clerks and office rent required at the general agency of the said The Greenwich Insurance Company out of his own funds, and no part of which expenses is to be chargeable to the said The Greenwich Insurance Company.   Article V. The said The Greenwich Insurance Company hereby further agrees to furnish all necessary agency supplies, books of record and blanks which shall be required for proper use in said

business and to pay the expenses incurred in the adjustment of all losses and such commissions to the sub-agents as may be deemed necessary by the said The Greenwich Insurance Company as well as such other charges as may be allowed by the Greenwich Insurance Company in said sub-agents' monthly accounts, and all taxes and lawful charges made by the different states in which the said The Greenwich Insurance Company may transact business. Article VI. The said Calvin L. Stowell hereby further agrees to render to the said The Greenwich Insurance Company a just and true weekly and monthly account, in such form as they may prescribe of premiums on all policies or renewals thereof issued both by himself and sub-agents aforesaid, said monthly accounts to be forwarded to the said The Greenwich Insurance Company before the twenty-fifth of each succeeding month. Article VII. And the said Calvin L. Stowell also agrees promptly to comply with any and all instructions and directions as may be given him by the said The Greenwich Insurance Company from time to time as they in their discretion may deem proper. Article VIII. And the said The Greenwich Insurance Company in consideration of the premises, hereby agrees to pay unto the said Calvin L. Stowell, ten (10) per cent commission on the net gross premiums received by him as such general agent aforesaid; that is to say, on the gross premiums less return premiums and reinsurance, if any. Article IX. And it is expressly understood and agreed, that at the time of rendering the monthly statement aforesaid, upon which monthly statements settlements between the parties to this contract shall be made at the time the said Calvin L. Stowell shall remit and pay over to the said The Greenwich Insurance Company all moneys remaining in his hands. Article X. And it is hereby further understood and agreed by and between the parties hereto that this contract may be terminated at any time by either party giving ninety (90) days notice thereof in writing, and without any liability on the part of the said The Greenwich Insurance Company beyond the commission aforesaid actually earned at

the closing of said agency. But any or all of said sub-agen-
cies may be discontinued by the said The Greenwich Insur-
ance Company at any time, and the said Calvin L. Stowell
hereby agrees to become and does become personally responsi-
ble to the said The Greenwich Insurance Company for any
premiums due from any person appointed or employed by
him in the interest of the said The Greenwich Insurance
Company.

"In witness whereof, the said The Greenwich Insurance
Company of the City of New York has hereunto affixed its
corporate seal and the said Calvin L. Stowell has hereunto
affixed his hand and seal.

"(Signed)          ·          THE GREENWICH INSURANCE
                                COMPANY,
                         "By M. A. STONE, Sec'y. [SEAL.]
"(Signed)          CALVIN L. STOWELL.    [SEAL.]"

Seven years and four months passed away during which
both parties continued to act under the foregoing agreement,
but the defendant finally determined for some reason to ter-
minate the relations existing between them, and, in accordance
with the tenth article of the agreement, it, on or about the
first day of May, 1895, gave the plaintiff ninety days' notice
in writing of its intention to terminate the agency, and subse-
quently, and on the first day of August, it was terminated
and the parties thereafter took the necessary steps to settle
accounts and a final settlement was reached May 7, 1896.
Twenty days later, and nearly ten months after the contract
was actually terminated, the plaintiff first brought to the
attention of the defendant his claim for damages, upon which
a recovery has been had in this action. The claim is that in
the course of the negotiations a parol agreement was made by
which the defendant agreed that in case the relations estab-
lished by the written contract should be terminated, the busi-
ness which should in the meantime have been created by the
plaintiff, and at his expense, should belong to him, and that
such agreement was in fact violated by the defendant. The

defendant's counsel objected to the questions asked for the purpose of eliciting this alleged collateral and suppletory agreement on the ground that all of the prior oral negotiations were necessarily merged in the writing to which the parties reduced the terms of their agreement and that evidence of prior conversations had must necessarily be for the purpose of contradicting the agreement. All of these objections were overruled, and the plaintiff was permitted to testify in effect that a company that he had for some considerable time served as general agent reinsured its risks and went out of business without giving him notice of its intention to do so, leaving him representing but one company, and being desirous of having another company to take the place of the one he had lost he applied to Dr. Foote, who, shortly before the twenty-seventh day of December, 1887, called upon Colonel Stone, then secretary of the defendant, and informed him of the way in which Stowell had been treated by the Clinton Insurance Company, and further said to him that Mr. Stowell wanted a company that, if it terminated the relations without fault on Stowell's part, would not interfere with his agents or business; to which Mr. Stone replied: "If we make an arrangement, and the business proves profitable and satisfactory, we shall not want to make any change; and if not, if it is not profitable, we shall not want the business nor the manager, either."

Upon the suggestion of Dr. Foote, Mr. Stowell visited New York, and on the twenty-seventh day of December they had an interview with Colonel Stone, at the offices of the defendant, where Mr. Stowell claims he informed Colonel Stone that he would not be willing to make a contract with any company unless it was in consideration of an agreement that, if the contract should be terminated, the agency plant, that is, the agents and the renewals of the business, should be left with him; that Colonel Stone told him that if the arrangement was made it would be permanent as long as it was profitable, and, if it was not profitable, he would not want the agents or the renewals of the business, or the agency management; that the

Greenwich Insurance Company would never take a course of
that kind.  The plaintiff then went away to give the officers
of the defendant an opportunity to determine what to do
touching his application for a general agency; he returned in
the afternoon of the same day, when Colonel Stone told the
plaintiff that they had decided to give him the general agency,
to which Mr. Stowell replied : " All right."

The form of the contract seems to have been the next sub-
ject considered, and Dr. Foote had in his possession the con-
tract between the Jersey City Insurance Company and this
plaintiff, and it was produced and handed to Colonel Stone,
the plaintiff saying, according to his testimony : " ' That is
satisfactory to me if it is to you.'   He said it was satisfactory
to him.   And thereupon the Jersey City contract was left
with Mr. Stone to be copied with the necessary changes of
names of parties and dates and to be signed when prepared."
A third and final interview took place on the morning of
December twenty-eighth, but nothing seems to have been said,
according to the plaintiff, having any bearing upon his pres-
ent contention.

It appears from the further testimony of the witness that
while this form of contract was proposed by him, with the
statement on his part that such a contract would be satisfac-
tory to him, and it was accepted by the defendant without
modification, he nevertheless said to Colonel Stone : " I
wouldn't sign a contract with any company of that kind
except on condition that if it was terminated by the company
that the agencies and the renewals of the business should be
left with me and not interfered with."   The witness was
further interrogated by his counsel, with the following result :
" Q. That, of course, was true that you wouldn't sign any
contract except with that condition ?   A. Yes, sir.   Q. Never-
theless, you did sign one without that condition, did you not ?
A. With whom ?   Q. With the Greenwich ?   A. No, sir;
that was the condition on which I signed that contract.   Q.
That was not in it ?   A. No, sir.   Q. It was outside of it ?
A. As I take it, the two are different."

Colonel Stone, the defendant's president, emphatically denied all of the testimony touching the alleged collateral and suppletory agreement, but that fact has no direct bearing upon the legal questions presented on this appeal, which brings up for review a judgment entered on the verdict of the jury, which was founded on their belief that the plaintiff had two contracts with the defendant, one of which was reduced to writing while the other was allowed to rest in parol.

*John Notman* and *William Allen Butler* for appellant. The court erred in allowing the introduction of evidence of the parol conversation as to the alleged promise, the same being simply a part of the subject-matter embraced in the written contract and expressed therein. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Case* v. *P. B. Co.*, 134 N. Y. 78; *Lewis* v. *Yagel*, 77 Hun, 337; *Woodard* v. *Foster*, 64 Hun, 147; *Eighmie* v. *Taylor*, 98 N. Y. 288; *Wilson* v. *Deen*, 74 N. Y. 531; *Engelhorn* v. *Reitlinger*, 122 N. Y. 76; *Lamson C. S. S. Co.* v. *Hartung*, 46 N. Y. S. R. 191; *Seitz* v. *B. R. M. Co.*, 141 U. S. 510.) Upon the whole testimony it is conclusively established that there was no such alleged promise made as the plaintiff now claims, and that there was nothing in fact constituting any agreement outside of the written contract. (*Seitz* v. *B. R. M. Co.*, 141 U. S. 510.)

*William F. Cogswell* and *William N. Cogswell* for respondent. It was competent to prove the parol collateral agreement, which is the foundation of the action. (*Engelhorn* v. *Reitlinger*, 122 N. Y. 76; *Jeffery* v. *Walton*, 1 Starkie, 267; *Batterman* v. *Pierce*, 3 Hill, 171; *Morgan* v. *Griffith*, L. R. [6 Exch.] 70; *Lindley* v. *Lacey*, 17 C. B. [N. S.] 578; *Erskine* v. *Adeane*, L. R. [8 Ch.] 756; *Mann* v. *Nunn*, 43 Law Jour. 241; *Chapin* v. *Dobson*, 78 N. Y. 74; *Eighmie* v. *Taylor*, 98 N. Y. 288; *Matter of Crosby* v. *Day*, 81 N. Y. 242.)

PARKER, Ch. J. The general rule is that when an agreement is reduced to writing it, as between the parties, merges

and overcomes all prior or contemporaneous negotiations and
declarations upon the subject and that oral evidence is not
admissible to vary, explain or contradict its terms, for the
writing is conclusively presumed to contain the whole engage-
ment of the parties.   There are certain exceptions to the rule,
which have grown out of efforts of the courts to prevent fraud
and injustice in particular cases and which are sometimes so
loosely applied, as this court said in *Thomas* v. *Scutt* (127 N.
Y. 133), as to threaten the integrity of the rule itself, an out-
come which the courts should be very careful to guard
against; for all those who are charged with the administration
of the law have almost daily forced upon them the importance
of reducing agreements to writing and thereafter protecting
them from oral assault owing to the imperfection of human
memory and the tendency on the part of some to color their
testimony in the direction of their interests.   The exceptions
to the general rule, as this court said in *Thomas* v. *Scutt*
(*supra*), may be grouped into two classes, one where parol evi-
dence is received to show that that which purports to be a
written contract is in fact no contract at all, and second,
where the written instrument is recognized as valid, so far as
it goes, but is treated as incomplete, such as receipts and
writings that upon their face show that only portions of the
agreement are embodied in the instrument.   " Two things,
however, are essential," said the court in *Thomas* v. *Scutt*
(*supra*), " to bring a case within this " (second) " class: 1. The
writing must not appear upon inspection to be a completed
contract, embracing all the particulars necessary to make a per-
fect agreement and designed to express the whole arrange-
ment between the parties, for in such a case it is conclusively
presumed to embrace the entire contract.   2. The parol evi-
dence must be consistent with and not contradictory of the writ-
ten instrument."   And again, in the course of the same opinion,
it was said : " You can no more add to or contradict its legal
effect by parol stipulations preceding or accompanying its execu-
tion than you can alter it through the same means in any other
respect."   Collateral agreements are not regarded as entitled

39

to classification with the exceptions to the general rule, for the reason that they are separate, independent and completed contracts. They may be proved by parol because they rest in parol. But the caution suggested by the Supreme Court of the United States in *Seitz* v. *Brewers' Refrigerating Machine Co.* (141 U. S. 510) should not be lost sight of. That court, after recognizing the fact that there may be existing and separate oral agreements as to matters on which a written contract is silent, provided they be not inconsistent with the terms of the writing, said : " Such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies ; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself, upon its face, is couched in such terms as import a completed legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, is reduced to writing."

The plaintiff's contention is that his judgment of five thousand dollars properly rests upon the breach of an oral agreement, which his counsel asserts is collateral and suppletory to the written agreement which, upon its face, bears every evidence that the parties intended it as the repository of all their negotiations and agreements as to the agency. The written agreement contained ten articles, the first of which contains the names of both parties and the date ; the second, the appointment by the defendant of the plaintiff as its general agent to effect insurance within prescribed territory, and conferring on him the authority to appoint sub-agents " subject to approval of and to be commissioned by the " defendant; articles third and fourth contain the engagement of this plaintiff to appoint sub-agents, pay the expenses incident thereto, and to diligently enforce the defendant's instructions; by article five the defendant agreed to furnish all necessary agency supplies and to pay expenses incurred in adjusting

losses, together with such charges by the sub-agents as the defendant should allow ; articles six and seven provide that the plaintiff should render a just and true weekly and monthly account of premiums on all policies or renewals thereof, and that he should comply with any and all instructions given to him by the defendant; article eight contains the defendant's promise to pay the plaintiff a ten per cent commission on net gross premiums, while by article nine the plaintiff agreed to remit and pay over monthly all moneys remaining in his hands. As neither of the parties desired to have the contract binding for a fixed time, both agreed that either party should be at liberty to terminate it; and by the tenth article was provided the method by which such termination should be accomplished ; and in order to avoid any misunderstanding whatever, it was expressly provided that there should be no liability on the part of the defendant should the contract be terminated.   As this article has an important bearing in determining whether the plaintiff's alleged oral agreement was independent and collateral, so much of it as bears upon the subject that I have referred to is herewith quoted: " It is hereby further understood and agreed by and between the parties hereto that this contract may be terminated at any time by either party giving ninety (90) days' notice thereof in writing *and without any liability on the part of said The Greenwich Insurance Company* beyond the commissions aforesaid actually earned at the closing of said agency.   But any or all of said sub-agents may be discontinued by the said The Greenwich Insurance Company at any time."   Notwithstanding the provision in the written agreement that the termination of the contract by either party in the manner provided in article ten should be " without any liability on the part of said The Greenwich Insurance Company beyond the commissions aforesaid actually earned at the close of said agency," the plaintiff has been permitted to recover a judgment of five thousand dollars as compensation for the damages sustained by the plaintiff upon its termination, upon the theory that there was " another parol, independent agreement

which affected the rights of the parties only when that written agreement had ceased to exist."

We come now to an examination of the testimony touching the negotiations preceding the execution of the contract, which one of the parties insists became merged in the writing, while the other claims that a portion of those negotiations constituted an independent, collateral agreement, the effect of which was to render the defendant liable in damages upon its termination of the contract, notwithstanding such contract provided that there should be no liability except for commissions actually earned. The plaintiff, as the general agent for two insurance companies, had established agencies in a portion of the territory of the states of New York and Pennsylvania, receiving for all policies and renewals issued by them a certain percentage of the premiums paid, and his agency being terminated by one of the companies, he sought to obtain the agency of another company and did in fact become the general agent of two other companies. In his behalf he interested Dr. Foote, who interviewed Colonel Stone, then the secretary of this defendant, with such favorable results that Dr. Foote at once advised the plaintiff to come to New York, and some time in the forenoon of the twenty-seventh of December they called upon Colonel Stone, at the place of business of the defendant, where, after an interview in which the plaintiff complained of the treatment that he had received from the Clinton Insurance Company, he asserted, according to his present recollection, that he would not enter into a contract with another company unless in the event of the termination of the contract the business brought into existence by him during his agency and the agencies reporting to him should not be taken away, after which he withdrew in order to give the officers of the defendant an opportunity to determine whether his request to become their general agent would be accepted. After lunch on the same day the plaintiff, accompanied by Dr. Foote, went again to the defendant's offices, when they were at once informed by Colonel Stone that the defendant had decided to give to Mr. Stowell

the general agency for the territory solicited by him, to which Mr. Stowell replied " All right." The form of the contract was next considered, and for that emergency the plaintiff was well provided, for his friend Dr. Foote had in his possession the contract between the plaintiff and the Jersey City Insurance Company, and the plaintiff had the contract between the Clinton Insurance Company and himself. Dr. Foote produced the contract between the Jersey City Insurance Company and the plaintiff, handed it to Colonel Stone, at the same time saying, according to his testimony : " That is satisfactory to me if it is to you," to which Colonel Stone replied that it was satisfactory to him. Later the plaintiff testified : " I told Colonel Stone at the first interview that I would sign a contract of that kind on condition that if it was terminated the agency and renewals should be left to me, and he said it was satisfactory to him, and I said it was satisfactory to myself." The plaintiff's contract with the Jersey City Insurance Company was left with Colonel Stone, with the understanding that the new contract was to be like it, with the exception of the change in names, parties and dates, and that understanding was completely carried out. While the contract bears the date of December 31st, it was not in fact executed until January 11th, at which time, the plaintiff testified, nothing was said about the termination of the contract. There was other evidence corroborating plaintiff in so far as he testified to the effect that he insisted in two conversations that the agents and the renewals of the business should be left with him upon the termination of the contract; on the other hand, it was denied by Colonel Stone; but it will serve no useful purpose to refer to it, as the evidence of the plaintiff to which I have referred brings out the point, and shows that the plaintiff had in person three interviews with Colonel Stone prior to the execution of the contract, and that in two of those interviews he put forward the claim that the business builded up under his agency should belong to him at the termination of the contract.

In the first place it will be noted that whatever was said upon the subject was said in the three interviews had between

the parties for the purpose of bringing about an agreement by which the plaintiff should obtain the agency which he solicited from the defendant, and, therefore, is within the general rule which presumes that all prior negotiations are merged in the written agreement. That rule unaided calls for the exclusion of the testimony offered in behalf of the plaintiff with a view of proving an alleged, collateral, oral agreement. But in addition to the fact that what was said on the subject preceded the written contract and formed a part of the negotiations resulting in the meeting of minds upon the basis expressed in writing later, the so-called oral agreement was not independent and collateral. It does not deal with an independent subject, but instead with one which the contract covers — a contract executed in the form proposed by the plaintiff. Now, these subjects were fully covered by the contract which he proposed for execution; it provided that while the plaintiff should solicit the agents, they were not only to be subject to the approval of the defendant, but to be commissioned by it, whereupon they necessarily became the defendant's agents. Article two of the contract so provided and by article ten the defendant reserved the right to discontinue at any time any or all of the said sub-agencies. The agents were, therefore, the agents of the defendant, having power within the limits of the authority of a sub-agent to bind the defendant, the defendant having the right to commission them or not, and to discontinue them at will; the contract should have provided for their discontinuance by the defendant at the termination of the contract if that was the intention of the parties, but instead of that it was provided that there should be no liability on the part of the defendant in such an event except to pay commissions. Now, it is urged that the defendant is liable because it did not discontinue the said agents. Without pursuing this subject further, it is sufficient for my present purpose to call attention to the fact that the general subject of agents, how selected by the plaintiff and the matter of their appointment and removal by the defendant, was reduced to writing and included in the

contract which purports on its face to embrace all the negotiations of the parties. Beyond all that, the contract recognizes that it might not prove to be for the best interests of the parties that the contract should run on indefinitely, and so a method of termination was provided in respect to which both parties were placed on an equality, and, in order that there might be no misunderstanding as to the rights of the parties to the agreement, it was provided that the termination of the contract, no matter which one of the parties brought it about, " *should be without any liability on the part of said The Greenwich Insurance Company* beyond the commissions actually earned at the close of the said agency." This was the deliberate engagement of the parties, and by it they attempted to close the door against all possible claims for services or damages, and to absolutely destroy all opportunities for controversy. An oral agreement that reaches another result and imposes a liability upon the defendant for renewing policies originally issued through the sub-agents and for not discontinuing agents appointed by authority of the contract, does not (in the language of authority) " relate to a subject distinct from that to which the written contract applies." Indeed, the situation compels us to go further and say that the alleged oral agreement not only varies the contract, but it explicitly contradicts that portion of it which declares that upon the termination of the contract there shall be no liability on the part of the defendant except for commissions earned.

The question was raised by objection to the admission of testimony, followed by a motion to strike it all out after the testimony was in.

The judgment should be reversed and a new trial granted, with costs to abide the event.

O'BRIEN, BARTLETT, HAIGHT, MARTIN, VANN and LANDON, JJ., concur.

Judgment reversed, etc.