THE TRUSTEES OF THE FREEHOLDERS AND COMMONALTY OF THE TOWN OF SOUTHAMPTON, Respondent, *v.* NATHAN C. JESSUP, Appellant.

1. EVIDENCE — PAROL EVIDENCE INADMISSIBLE TO VARY WRITING. Parol evidence is not admissible to inject into a written contract a provision as to which the writing itself is silent.

2. TOWN OF SOUTHAMPTON. A resolution adopted by the trustees of the town of Southampton: " Resolved, that Nathan C. Jessup be and is hereby given liberty to make a roadway and to erect a bridge across the Great South Bay, commencing at the south point of Potunk Neck ; thence running southerly to the beach, the said bridge to be a drawbridge of a width of not less than twenty feet, the height above the meadow three feet, and the draw to be twenty feet wide, and the said Nathan C. Jessup shall not cause any unnecessary delay to those navigating the waters of said bay,," cannot be varied by parol evidence tending to show that both parties intended that the roadway should be of wood; any ambiguity arising out of the terms employed may be interpreted by such evidence; but the ambiguity must relate to a subject treated of in the writing and must arise out of words used in treating that subject; it cannot arise as to a provision concerning which the resolution itself is silent.

3. INJUNCTION. Where the grantee without permission digs earth from the lands of the grantor for the purpose of the roadway, an injunction restraining him is properly issued, since such resolution does not expressly give him that privilege and none can be implied merely from the fact that it would be convenient for him and but slightly inconvenient to the grantor if he obtained his material from such lands.

*Trustees of Southampton* v. *Jessup,* 64 App. Div. 525, modified.

(Argued December 11, 1902; decided January 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 29, 1901, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The main facts upon this appeal are substantially the same

as they appeared upon the former appeal and as stated in 162 N. Y. 122. The judgment of the trial court restrains the defendant " from digging, excavating, embanking or otherwise disturbing the lands under the waters of the Great South Bay at or adjacent to Potunk Point, described in the complaint, for the purpose of making a solid roadway or embankment, and from substituting for the wooden bridge or structure supported on piles which the defendant Nathan C. Jessup has built across said Great South Bay at or near said Potunk Point (or for any part thereof), the solid embankment of earthen materials, across, over or through said Great South Bay or any part of said bay."

The Appellate Division affirmed this judgment by a divided vote, and the defendant appealed to this court.

*Charles M. Stafford* for appellant. No evidence should have been received in the case except such as related to the questions left undecided by the Court of Appeals. (*Trustees, etc.,* v. *Jessup,* 162 N. Y. 128.) Assuming that the decision of the Court of Appeals was not based solely upon the resolution, its decision is still binding on the lower court. (*Mott* v. *Richmeyer,* 57 N. Y. 49; *Thomas* v. *Scutt,* 127 N. Y. 133; *Corse* v. *Peck,* 102 N. Y. 513; *Bast* v. *Bank,* 101 U. S. 93; *Moore* v. *Simmons,* 133 N. Y. 695; *Myers* v. *Dean,* 10 Misc. Rep. 402.) No parol evidence was admissible upon the question whether the defendant had the right to make a solid roadway. The resolution is not ambiguous in that respect, and the learned trial judge erred in admitting evidence to vary its terms. (*Herrmann* v. *M. Ins. Co.,* 81 N. Y. 184; *Lowber* v. *Le Roy,* 2 Sandf. 202; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.,* 121 N. Y. 435; *Case* v. *P. B. Co.,* 134 N. Y. 78; *Emmett* v. *Penoyer,* 151 N. Y. 564; *Hill* v. *H. Ins. Co.,* 10 Hun, 26; *W. R. M. Co.* v. *N. Mfg. Co.,* 66 Minn. 156; *Filkins* v. *Whyland,* 24 N. Y. 338.) The roadway was to be made by digging in the flats, as the defendant did, and using the material excavated. (*People ex rel.* v. *Jessup,* 160 N. Y. 253.) The lower court has entirely mistaken the effect

of the decision of the Court of Appeals, and allowed this case to be tried on an erroneous theory. (*Trustees, etc.,* v. *Jessup,* 162 N. Y. 129.)

*Thomas Young* for respondent. The language of the resolution is entirely satisfied by a wooden structure supporting a roadway in the ordinary way of a bridge. (*People ex rel.* v. *Jessup,* 160 N. Y. 253.) Evidence was properly received to show the intent of all the parties upon a point as to which the resolution is ambiguous. (*Thomas* v. *Scutt,* 127 N. Y. 141 ; *People ex rel.* v. *Jessup,* 160 N. Y. 253 ; *Newhall* v. *Appleton,* 114 N. Y. 143.)

VANN, J. On the 2nd of June, 1888, the plaintiffs adopted a resolution of which the following is a copy: " Resolved : That Nathan C. Jessup be and is hereby given liberty to make a roadway and to erect a bridge across the Great South Bay, commencing at the south point of Potunk Neck; thence running southerly to the beach, the said bridge to be a drawbridge of a width of not less than twenty feet, the height above the meadow three feet, and the draw to be twenty feet wide, and the said Nathan C. Jessup shall not cause any unnecessary delay to those navigating the waters of said bay."

This resolution is now before us for the third time. On the first occasion the power of the plaintiffs to adopt the resolution was strenuously contested, but we held that through the Andros and Dongan charters they had power to authorize a riparian proprietor to construct and maintain at the locality in question such a structure as the state itself might have authorized had it, instead of the town, succeeded to the title and control of the English crown over the waters affected. (*People ex rel. Howell* v. *Jessup,* 160 N. Y. 249.)

On the second occasion the plaintiffs contended that the resolution conferred a revocable license only, and that it did not authorize the construction of a solid roadway and a drawbridge but simply a structure on piles with a drawbridge therein, while we held that the right created was a franchise,

which empowered the defendant to make any reasonable and ordinary roadway, out of such materials as are commonly used for that purpose. We further held that the grantee waived no right by building a temporary structure in the first instance. (*Trustees of Southampton* v. *Jessup*, 162 N. Y. 122.)

In construing the resolution we remarked that a grant from the public, if ambiguous, should be construed in the interest of the public, but that this principle should be applied only when doubt arises, " for when the meaning is clear there is no room for construction." We then said : " The defendant was not to erect a bridge and roadway, but to *make* a roadway and *erect* a bridge. \* \* \* In the absence of specifications in the grant, the defendant had the right to make a roadway out of the materials in common use for the construction of roads, such as earth and stone. Wood is not ordinarily used for the purpose, and the right conferred was not to build a viaduct, but make a roadway, which is generally solid from the ground up. If the plaintiffs wished to limit the defendant to a wooden structure, resting on piles, which would have been more like a bridge than a roadway, they should have said so. The resolution is silent upon the subject, for the words, ' height above the meadow three feet,' refer to the bridge, and whatever was said between the parties before it was passed, assuming it to be admissible, showed that the defendant wished to build a solid roadway on the south side such as he had already built on the north side. He applied orally to the plaintiffs for authority to build a roadway and bridge. They went over the ground with him, saw the situation, advised with the neighbors at a public meeting, and on receiving the consent of all but one out of over two hundred, granted his application, specifying the kind of bridge, but making no specification as to the roadway. There is no evidence to support the conclusion of the trial judge that it was the intention of the parties to have the roadway built of timber. \* \* \* We think the defendant had the right to build any reasonable and ordinary roadway, such as an

embankment of earth, but whether he could dig upon the land
of the plaintiffs in order to get the  material is open to ques-
tion, and as the matter has not been fully argued we do not
now decide it.   The evidence suggests, but does not show,
that the earth and  sand of the roadway may, unless confined
in its place, ultimately wash away somewhat and result in the
formation of sandbars which will obstruct navigation.   We
pass upon no question relating to this subject.   The complaint
should·not be dismissed because the investigation upon the
trial under review was not thorough enough to exhaust the
facts and a new trial may develop a different situation in some
respects."

We have made this long quotation from our previous
opinion in order to show what was decided and what was
reserved.   It is clear that we construed the resolution and
held that it authorized two different structures, to wit, a solid
roadway and a drawbridge, not a bridge on piles with a draw-
bridge in it.   We adhere to our former decision and do not
wish to add further reasons for the judgment then rendered.

Upon the trial now under review parol evidence was received
tending to show that both parties intended that the roadway
should be of wood and although some of the trustees them-
selves gave evidence to the contrary, the trial judge held
" that it was the intention of the parties that the defendant
should have permission to build a *road-bridge* across the
bay and that he has no right to build a solid roadway in any
part of the bay."   This evidence appears to have been
received and made the basis of the present judgment, because
we stated in our previous opinion that we had searched the
record to see if there was any evidence, aside from the reso-
lution itself, bearing upon the intention of the parties.   We
said this because the trial court had found in the record then
before us " that it was the intention of said trustees and of the
defendant that there should be constructed a roadway built of
timber upon piles driven into the mud and water."   Our
object was to show that the finding was without evidence of
any kind, good or bad, to support it, but not to sanction the

introduction of parol testimony to add something to the resolution which the parties had failed to insert. Some evidence of this character had been received on that trial without objection and we said, *arguendo*, that even "assuming it to be admissible, (it) showed that the defendant wished to build a solid roadway on the south side, such as he had already built on the north side." Regretting that our language should have misled the courts below, we will now consider whether such evidence was admissible under the circumstances of this case.

The franchise in question is a contract in writing which cannot be varied by parol evidence, although if there is an ambiguity arising out of the terms employed such evidence may be received, not to vary the instrument, but to enable the court to appreciate the force of the words used in reducing the agreement to writing. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Stowell* v. *Greenwich Ins. Co.*, 163 N. Y. 298.)

Parol evidence can neither add to nor take from the contract, but it can aid in interpreting a word or expression of ambiguous meaning by showing, through the circumstances surrounding the parties when their minds met and the language used by them at the time, the sense in which the doubtful language was employed. "It is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but to enable it to understand what they wrote as they understood it at the time. Such evidence is explanatory and must be consistent with the terms of the contract." (*Thomas* v. *Scutt*, *supra*, citing *Dana* v. *Fiedler*, 12 N. Y. 40; *Collender* v. *Dinsmore*, 55 id. 202; *Newhall* v. *Appleton*, 114 N. Y. 140; *Smith* v. *Clews*, Id. 190.)

So Mr. Wharton says: "We are restricted, therefore, to the interpretation of the language used, and proof of intention is only admissible when, in cases of ambiguity, proof of intention enables us to discover what the language means. * * * The contract cannot be varied; its obscure expressions may be explained, but this is for the purpose not of moulding,

but of developing the true sense." (2 Wharton on Evidence, §§ 937, 946. See, also, 1 Greenleaf, § 275; Underhill, 323; Rice, § 170.)

What ambiguous word or expression of doubtful meaning is there in the resolution relating to the material out of which the roadway was to be constructed? None whatever, for the writing is silent upon the subject. The defendant was given liberty to make a roadway, but nothing was said as to how it should be made or what it should be made out of. An ambiguity, in order to authorize parol evidence, must relate to a subject treated of in the paper and must arise out of words used in treating that subject. Such an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful. Nothing is said in the resolution before us upon the subject of the material to be used, or the method to be employed in making the roadway, and hence there is no ambiguity arising out of the words used with reference to that subject. Witnesses cannot be permitted to swear something into the instrument, which neither explains nor interprets any language used therein. They cannot swear a wooden roadway into a franchise which is silent, even to the exclusion of implication, as to the substance out of which the roadway is to be made. That would be making a new contract instead of explaining an old one and would violate the principle upon which parol evidence is received to aid in interpreting an ambiguous word or expression. Since the plaintiffs gave the defendant the right to make a roadway, but did not restrict him to the use of wood, he was not obliged to use wood. As we held on the last appeal : " In the absence of specifications in the grant, the defendant had the right to make a roadway out of the materials in common use for the construction of roads, such as earth and stone." We think the evidence was not admissible for any purpose, and as that part of the judgment which restrains the defendant from making a solid roadway rests wholly upon this incompetent testimony, it should not be allowed to stand.

That part of the judgment, however, which restrains the defendant from digging upon the lands of the plaintiffs in order to obtain materials to make the roadway, does not rest upon parol evidence, but upon the resolution itself. It is not claimed that the defendant ever received permission from the plaintiffs to dig earth from their lands for the purpose of the roadway, except through the resolution. As no express permission appears therein, the only question is whether such a right may be fairly implied from the terms of the resolution. We find nothing from which such an implication can arise. It is obvious that the defendant was to furnish his own materials for the roadway the same as he was for the bridge. The fact that it would be very convenient for him and but slightly, if at all, inconvenient to the plaintiffs, if he thus obtained his materials, does not warrant the implication that they granted him the privilege. We think he had no right to dig upon their lands for that purpose.

Our conclusion is that the judgments below should be modified by striking out that part of the injunction which restrains the defendant from making a solid roadway and, that, as thus modified, they should be affirmed, without costs of this appeal to either party.

PARKER, Ch. J., GRAY and O'BRIEN, JJ., concur; BARTLETT, HAIGHT and CULLEN, JJ., vote for affirmance.

Judgment accordingly.