THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MARGARET E. CALL, Defendant.

Supreme Court, Hamilton County, July 5, 1927.

Deeds — construction — deed to State of land within Forest Preserve excepted parcel of fifty acres "known as Pine Point on Sacandaga Lake "— oral evidence admissible to show boundaries of Pine Point — evidence shows intention to except "whole peninsula " extending into lake and not merely one point — defendant entitled to fifty acres.

This is an action in ejectment by the State of New York to recover fifty acres of wild land within the Forest Preserve in the possession of the defendant. The common grantor of the parties deeded to the State certain land definitely described " excepting and reserving a parcel of Fifty (50) acres in the said Lot sixteen (16) and Lot seventeen (17) known as Pine Point on Sacandaga Lake." The defendant's predecessor acquired from the common grantor said parcel of land known as Pine Point. Parol evidence is admissible in view of the indefiniteness of the description of the land excepted from the deed to the State to show the intention of the parties as to the quantity of land conveyed to the State.

The evidence shows that the sum paid by the State for the land conveyed to it did not include fifty acres at Pine Point, and also establishes that it was the intention of the parties that Pine Point should include not only a single point of land running into the lake but what is known as " the whole peninsula," including several points of land running into the lake at about the same place, and, therefore, the State is not entitled to judgment evicting the defendant from the land in question.

ACTION in ejectment to recover possession of lands in the Forest Preserve.

*Albert Ottinger, Attorney-General* [*C. S. Ferris, Arthur W. Orvis* and *Louis B. Shay, Deputies Attorney-General,* of counsel], for the plaintiff.

*Alfred D. Dennison,* for the defendant.

HEFFERNAN, J. This is an action in ejectment to recover possession of twelve acres of land in lot 17, township 2, Totten & Crossfield's Purchase, lying in Hamilton county. The premises are wild lands within the Forest Preserve, not in actual occupancy by the plaintiff, but in possession of the defendant. It is conceded that the State owns lots 16 and 17, except Pine Point, of which the defendant is the owner. The disagreement here involves solely the area of Pine Point. The issue arises in connection with the construction of the exception contained in a deed from William Harris to the People of the State of New York dated January 3, 1901. The description of the lands in this deed is as follows: " Totten and Crossfield's Purchase. Township Two (2)   *   *   * Lots Fifteen (15) Sixteen (16) and Seventeen (17) each containing two hundred sixty-nine (269) acres of land and water, excepting and reserving a parcel of Fifty (50) acres in the said Lot sixteen (16) and Lot seventeen (17) known as Pine Point on Sacandaga Lake."

William Harris is the common source from which plaintiff and defendant's predecessor derived whatever title they have to these premises. About one-half of lots 16 and 17 is land and the remaining half water known as Sacandaga lake. In the deed it is recited that each lot contains 269 acres, making a total of 538 acres in lots 16 and 17. The actual area of these two lots, however, is 547.07 acres. In the conveyance from Harris to the State it is stipulated that the consideration was based upon a unit price of six dollars and fifty cents an acre for the quantity of lands conveyed and the grantor was paid for 488 acres of land in lots 16 and 17. From this it appears that even if defendant is able to retain the full 50 acres contained in the exception, the State, nevertheless, has the title to and possession of 10 acres over and above the quantity for which it paid.

The evidence discloses that in the northeasterly portion of Sacandaga lake a strip of land extends into the waters. This projection has one small spur to the south and a larger spur to the north, from the latter of which there are several subsidiary spurs. It is the plaintiff's claim that Pine Point includes only the area covered by the geographical definition of the word " point "

and consists simply of the smaller and more southerly of these projections and that it should be limited to that portion of the land extending into the lake beyond a straight line drawn from the deepest indentation on one side to the deepest indentation on the other. The point as thus defined and limited contains but thirty-eight acres. Defendant asserts that the term Pine Point is not limited in common acceptation to the smaller projection and was not thus limited in the minds of the parties to the conveyance but embraces the area known as " the whole peninsula " including the disputed triangular strip of twelve acres northerly of and adjacent to the premises which the State contends is the only territory covered by this designation.

The only office which the court is called upon to perform in construing transfers of title is to discover and give effect to the intention of the parties. The real question, therefore, for determination here is, what was the intention of the parties to the deed from Harris to the State when that conveyance was made on January 3, 1901? The learned counsel for the plaintiff urge that what was reserved in this deed is " a parcel * * * known as Pine Point on Sacandaga Lake," and that the words and figures " of Fifty (50) acres in the said lot sixteen (16) and lot seventeen (17) " contained in the exception and reservation are intended to be descriptive of the parcel excepted and reserved and do not amount to a covenant that the lands thus excepted contain fifty acres and that oral testimony of witnesses as to their understanding of what area constituted Pine Point is incompetent and should not be considered by the court. It is true that the enumeration of the quantity of land in a deed is not of the essence of the contract. The clause as to quantity is considered simply as a part of the description and will be rejected if it is inconsistent with the actual area where the same is capable of being ascertained by monuments and boundaries. (*Mann* v. *Pearson,* 2 Johns. 37; *Benjamin* v. *Welch,* 73 Hun, 371; *Brookman* v. *Kurzman,* 94 N. Y. 272.) The rule that the statement of the quantity of land in a deed has little or no weight in determining the boundaries does not apply where such boundary lines are uncertain. The difficulty here is that there are no definite boundaries to guide in reaching a conclusion. At the time of the conveyance there was no survey of these lands. There are no monuments or other outward evidence of the location of the property lines. That fact was well known to the parties when the instrument was executed and delivered. The aid of oral testimony is absolutely essential in locating these lines. Parol evidence is always admissible to apply a writing to its subject. It is a rule that where words of general description

are used in a deed oral evidence may be resorted to for the purpose of ascertaining and identifying the premises intended to be conveyed. Such evidence is always received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said but to enable it to understand what they wrote as they understood it at the time. (*Trustees of Southampton* v. *Jessup*, 173 N. Y. 84.) The court, therefore, has not merely a right but it is its duty to inquire into all the surrounding circumstances which may have acted upon the minds of the parties before it can approach the construction of the instrument itself. It is common experience that descriptions of property in rural communities are somewhat indefinite and even inaccurate, and courts deal leniently with such cases in seeking to ascertain the intention of the parties. The identity of the lands conveyed under those circumstances must, generally speaking, partake more or less of a latent ambiguity explainable by testimony *dehors* the grant. The antiquated doctrine that a document must be construed solely within its four corners, no matter how puzzling the problem, is no longer the law of this State.

Deeds are subject to the usual and ordinary rules of construction applicable to other instruments. In fact the Real Property Law (§ 240, subd. 3) provides that every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties so far as such intent can be gathered from the whole instrument and is consistent with the rules of law. The intent of the parties is the controlling principle of interpretation if that can be fairly spelled out of the instrument. Such intent when manifested by the language of the deed will, as a general rule, control in determining the property conveyed and in case of ambiguity or uncertainty the language of the description will be liberally construed in order to effectuate, if possible, such intention. The ultimate object is always to give to its terms such an interpretation, if this can be done without straining them beyond their fair import, as will carry out the intention that the parties may be presumed to have had in employing them. In order to ascertain the intention of the parties in respect to the property conveyed where the description is doubtful or uncertain, the court will, as nearly as possible, assume the position of the parties and interpret their words in the light of the circumstances surrounding the transaction. Every part of a deed ought, if possible, to take effect and every word to operate.

I fully agree with plaintiff's counsel that it is the rule that an exception or reservation in a deed is to be taken most favorably

to the grantee and if there is uncertainty or ambiguity in the language he should have the benefit of the doubt or the ambiguity. These clauses should be taken most strictly and construed most strongly against the grantor whose words they are and against him who stands in his place and if an advantage can be gained from an uncertainty or ambiguity in the words, the grantee or person standing in his place is entitled to the benefit of it. (*Jackson* v. *Blodget,* 16 Johns. 172; *Myers* v. *Bell Telephone Co.,* 83 App. Div. 623; *Blackman* v. *Striker,* 142 N. Y. 555; *Shinnecock Hills, etc., Co.* v. *Aldrich,* 132 App. Div. 118; affd., 200 N. Y. 533.) This rule, however, is subservient to the ascertained intention of the parties and is to be modified by the rule requiring effect to be given to every word so far as possible and is not to be applied or invoked until all other rules of construction fail.

The deed in question reserved to the grantor a parcel of fifty acres in lots 16 and 17. The description is so vague and obscure as to leave the intent of the parties uncertain; therefore, the boundary lines of Pine Point should be taken to be those which common reputation at the time the deed was made declared them to be. The preponderance of the evidence is that the term Pine Point had acquired by custom a well-known, peculiar, idiomatic meaning in that community and that it included the territory known as " the whole peninsula." The several projections of which it was formed had not acquired separate designations. Then, too, it is quite significant that when the State paid Harris for these lands it actually deducted from the purchase price a sum equivalent to the value of the full fifty acres. I am convinced that the parties to the deed never intended the phrase Pine Point to have such a narrow application as that for which the State now contends. Where a doubt arises as to the real intention of the parties an interpretation which plainly leads to injustice should be rejected and one which does not produce unusual and unjust results adopted. There is nothing in this record that requires the court to adopt a construction which would defeat the manifest intention of the parties to reserve at least fifty acres of land. This is not a case where the court should be zealous to find a way to deprive the citizen of his lands in order that the State may become possessed of property for which it has made no compensation. The equities of this cause are with the defendant and the complaint should be dismissed on the merits.

Judgment accordingly.