1. TRANSFER TAX—APPRAISAL—CORPORATE STOCK—MARKET VALUE.

　　Under Laws 1891, p. 50, c. 34, requiring the property of a decedent to be appraised at its fair market value, and providing that such value shall be ascertained, as to stock or bonds bought or sold in the open markets in New York after the day on which such report may be required, by ascertaining the range of the market and the average prices as thus found, *held*, that testimony of several transactions in stock owned by the decedent at different times during the year 1902, and opinions of witnesses as to its market value on the day of decedent's death, and the quotations in a publication purporting to give such values, sufficiently established the market value, though the property was not listed on the New York Stock Exchange.

2. SAME—EVIDENCE.

　　In order to establish the market value of property of decedent's estate, the state may introduce as evidence the opinion of witnesses qualified to answer, price quotations of the stock in the market reports, and prices established by sales in the regular course of business, though not made on exchanges.

In the matter of the appraisal of the estate of William F. Proctor, deceased. Motion to confirm report of appraiser. Granted.

Young, Verplank & Prince, for executors.
John P. Roosa, for Comptroller of the State of New York.

SMITH, S. The appraiser, in his original report in this proceeding, appraised the stock of the Singer Manufacturing Company owned by deceased at $1,100,400. In his supplemental report on a subsequent appraisal, he has fixed the value of the same stock at $2,695,980; the original appraisal being at par, and the subsequent appraisal at 245. Counsel for the executors contend that this valuation is excessive, and the principle adopted by the appraiser in reaching it erroneous. The Comptroller introduced evidence of certain sales of this stock in the city of New York, and quotations of the same from financial publications. He insisted before the appraiser, and now contends, that he has proven the market value of the stock. The executors claim that the stock had no market value at the time of decedent's death, and insist that the book value alone should control in its appraisal. The appraiser adopted the market value theory, and we are now called upon to examine the proceedings and review his determination.

The statute requires the property to be appraised at its fair market value, and chapter 34, p. 50, Laws 1891, so far as the same is applicable to this class of property, provides that:

"The persons whose duty it shall be to make such appraisal shall value * * * all such property, stocks, bonds or securities as are customarily bought or sold in open markets in the city of New York or elsewhere, for the day on which such appraisal or report may be required, by ascertaining the range of the market and the average of prices as thus found, running through a reasonable period of time."

The appraiser received testimony offered by the Comptroller of several transactions in this stock occurring at different times during the year 1902, the opinions of several witnesses as to its market value on the 8th day of April, 1902, the date of decedent's death, and the quotations of the stock in a publication which purports to be a supplement to the "Commercial and Financial Chronicle." One witness fixed the market value at from 240 to 250. He swore on cross-examination that his information as to value was obtained from the "Financial Chronicle." Another witness fixed the market value at from 250 to 270, taking his figures from the same authority. This witness also testified to some four transactions in the stock, in small blocks, during the year 1902. Another witness fixed the market value at 245, and testified to several purchases and sales of the stock by him during the year 1902. Mr. Stanton testified to purchases during 1902 of some 20 different blocks of this stock, running from 1 share to 105 shares, each at prices ranging from 238 to 300. He testified to 18 different sales during the same period, of small blocks of the stock, at prices ranging from 240 to 315. The evidence shows that there is a market for this stock at all times, and that it is quoted in the financial publications and authorities, although it is not listed on the New York Stock Exchange, and is not bought and sold in the curb market. While the stock was very inactive and the sales infrequent, and mostly of a private nature, still they were sufficient to establish a market value for the purpose of taxation. The sales were made in the regular and usual course of business, and some of them at public auction. It is not necessary that sales of this class of property should be made upon the exchanges. The question to determine is: What is the fair market value of this property? And any evidence which will tend to throw light upon that inquiry is competent—the opinions of witnesses qualified to answer, the price quotations contained in market reports and authentic publications, the prices established by actual sales of the property, and, in the absence of other competent evidence, the actual or intrinsic value of the property itself. The executors complain that the sales were so infrequent and insignificant, and the opinions of the witnesses were based upon such unreliable information, as to be incompetent upon this question. The evidence is not so satisfactory as we might wish, but it is all that has been given, and all, it seems, that could be obtained. Nor can it be said that the trades shown by the evidence were so trifling and insignificant as to be of no assistance in determining the value of the stock. The sale on April 14th, six days subsequent to the de-

cedent's death, of 105 shares at 245½, amounted to upwards of $25,000, and the several sales of 10 and 20 share lots would run up to several thousand dollars. ·I think, under the testimony, that this stock is one that was customarily bought and sold in the open market, and that its market value was at least 245 at the date of decedent's death. The appraiser was not confined to sales of the stock made previous to decedent's death. Upon the question of market value, evidence of sales for a reasonable time after, as well as before, the day on which it was to be determined, is admissible. Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130.

Nor is the question affected by reason of the fact that large blocks of the stock being offered at one time would break the market. Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130. The book value of the stock as shown by the executors, viz., the value of the capital stock at par and the undistributed surplus, would not form a proper basis of value of this property. Assuming that the contention of the executors is correct, that the stock has no market value, it is nevertheless taxable. Matter of Brandreth, 28 Misc. Rep. 468, 59 N. Y. Supp. 1092. And in such case the appraiser must ascertain the actual value of the property, taking into consideration the earning power of the property and the good will of the business. The Singer Company paid dividends during the year prior to Mr. Proctor's death, at the rate of 7 per cent. It also accumulated a surplus during the same period of nearly $9,000,000. The testimony does not show exactly what part of the surplus was accumulated between December 20, 1900, and January 1, 1902, but I infer, from the statement of Mr. Ver Plank, that practically the whole surplus was wiped out by the increase of stock on December 20th. Let us assume that for the year it was only $6,000,000. If, then, the whole net earnings of the company had been distributed during the year, the stock would have paid 27 per cent., and the appraisal would be much more favorable to the estate than in the Case of Brandreth, cited by counsel. Had the executors given evidence showing, not only the book value of the stock, based upon the amount of the capital and surplus, but the actual earning capacity of the plant and the good will of the business, we might have been constrained to abandon the speculative field of market value, but, having shown no facts from which the actual value of the stock can be determined, I think the appraiser was justified in his determination that it had a market value, and that in the light of all the evidence his valuation is very favorable to the estate. An order may be entered confirming the report as filed.

Report confirmed.