## In re CHAMBERS' ESTATE.

(Surrogate's Court, New York County.   January 30, 1912.)

**1.** TAXATION ☞895—DECEDENT'S ESTATES—APPRAISAL—AFFIDAVITS.
  Unverified statements as to market value of stock should not be received by the appraiser in fixing a transfer tax.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721: Dec. Dig. ☞895.]

**2.** TAXATION ☞895—DECEDENTS' ESTATES—APPRAISAL—"SECURITIES BOUGHT AND SOLD IN THE OPEN MARKET"—"REASONABLE TIME."
  Under Decedent's Estate Law (Consol. Laws, c. 13) § 122, providing that, in appraising the estate of any decedent, the appraiser shall value all stocks customarily bought or sold in open market in the city of New York for the day on which the appraisal or report is made, by ascertaining the range of the market and the average of prices for a reasonable period, stock not listed on the New York Exchange, but customarily dealt in on the open market, is within the classification of "securities bought and sold in the open market," and what constitutes "reasonable time" depends on the demand for the stock, as evidenced by the number of sales made, and, in the case of inactive securities, such period would be three months before and three months after the decedent's death, without regard to the fact that a sale of a large block of stock might tend to reduce the market price.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721: Dec. Dig. ☞895.
  For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

**3.** TAXATION ☞895—DECEDENT'S ESTATE—ORDER OF APPRAISAL.
  The value of a life estate of decedent's son in the entire estate must be ascertained by the state superintendent of insurance, and an order fixing the tax on the decedent's estate cannot be modified by the surrogate on the executor's appeal; but the appraiser's report will be remitted, to ascertain the value of the life estate according to law.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721 ; Dec. Dig. ☞895.]

In the matter of the estate of Josephine B. Chambers, deceased. From an order fixing the estate tax, the executor appeals. Appraiser's report remitted for correction, and for further report.

Spencer, Ordway & Wierum, of New York City (Otto C. Wierum, Jr., of New York City, of counsel), for executor.

Thomas E. Rush, of New York City, for the State.

FOWLER, S. This appeal from the order fixing tax is taken by the executor and trustee of decedent's estate upon the ground that the appraiser erred in estimating the value of 1,208 shares of stock of the Singer Manufacturing Company held by the decedent. The appraiser valued this stock at $481. The executor contends that the stock at the date of decedent's death was worth only $400. The decedent died on the 10th day of November, 1909.

[1] The only evidence adduced by the executor to show the value of this stock is an affidavit of John S. Stanton, in which he alleged that two shares of the stock were sold on November 8, 1909, at $472 a share, and two shares on the 3d of August at $455 a share.

This affiant also alleges that it would have been impossible at the date of decedent's death to have realized the above prices for so large a block of stock as 1,208 shares and that in his opinion the market value of the shares at the date of decedent's death was $400 per share. The attorney for the state comptroller submitted an affidavit by one Marvyn Scudder, who alleged that from investigations made by him he considered that the fair market value of the stock at the date of decedent's death was $484 per share. Attached to the appraiser's report and submitted on behalf of the state comptroller are certain statements made by Scudder. These statements, however, are not verified and should not have been received by the appraiser. They are therefore not entitled to any consideration in a proceeding to determine the value of this stock. No statement of assets and liabilities of the Singer Manufacturing Company was submitted to the appraiser, but it appears that the dividend paid in 1909 was 30 per cent. and in 1908 15 per cent. Upon this appeal an affidavit was submitted by George F. Martin, the examiner of values in the New York City office of the state comptroller. He alleges that 10 shares of stock of the Singer Manufacturing Company were sold on September 28, 1909, at $471 per share; that 4 shares were sold on October 21, 1909, at $475 a share; that 5 shares were sold on November 16, 1909, at $484 per share, and that 7 shares were sold on December 13, 1909, at $494 per share. The average selling price, based upon these sales would be $481, the price adopted by the appraiser. This, however, does not include the 2 shares of stock reported by Mr. Stanton to have been sold on November 8 at $472.

[2] Section 122 of the Decedent Estate Law (Consol. Laws, c. 13) provides that:

"Whenever by reason of the provisions of any law of this state it shall become necessary to appraise in whole or in part the estate of any deceased person, the persons whose duty it shall be to make such appraisal shall value * * * all such property, stocks, bonds, or securities as are customarily bought or sold in open markets in the city of New York or elsewhere, for the day on which such appraisal or report may be required, by ascertaining the range of the market and the average of prices as thus found, running through a reasonable period of time."

The affidavits submitted by both parties show that, while the stock of the Singer Manufacturing Company is not listed upon the New York Stock Exchange, it is nevertheless customarily bought and sold in the open market. Therefore it comes within the classification of securities the manner of whose appraisal is prescribed by the section of the Decedent Estate Law above quoted.

It was held by this court in the Matter of Kennedy (N. Y. Law Jour. March 8, 1911) [1] that the price of active securities should be ascertained by taking the average price for two months before and two months after decedent's death, while the price of comparatively inactive securities should be ascertained by computing the average price at which the securities sold within a reasonable time before and after decedent's death. What constitutes a reasonable time would appear to depend upon the demand for the stock as evidenced by the number of sales made. If a range of two months before and two months after decedent's death would be a reasonable time in which to ascer-

[1] 155 N. Y. Supp. 192.

tain the value of active securities, as held in the Matter of Kennedy, supra, it would appear that a range of three months before and three months after decedent's death would be a reasonable time in which to compute the value of inactive securities that are customarily bought and sold on the market.

The question of the value of the Singer Manufacturing Company stock was before the Surrogate's Court of Sullivan county in 1903 upon an appeal from an order fixing tax. In that matter there was evidence before the appraiser that, according to reports in the Financial Chronicle, the stock was worth from $240 to $250 at the date of decedent's death in 1902. Mr. Stanton, whose affidavit on behalf of the executor forms part of the appraiser's report in the matter under consideration, testified that during the year 1902 the price ranged from $238 to $300. Another witness testified that in his opinion the value of the stock was $245. The surrogate held that the appraiser was correct in appraising the stock at $245 a share, and no appeal was taken from his order. Matter of Proctor, 41 Misc. Rep. 79, 83 N. Y. Supp. 643. In the Matter of Curtice, 111 App. Div. 230, 97 N. Y. Supp. 444, affirmed 185 N. Y. 543, 77 N. E. 1184, there was before the court the question as to the value of the stock of a corporation known as Curtice Bros. Company. It was a private family corporation engaged in the manufacture of jellies, etc. It was not dealt in upon any market or exchange, except that a few sales had been reported as having been made at Rochester during the year previous to decedent's death. Immediately after decedent's death there was a bid quotation of $110 for the common and a reported sale of 10 shares of the preferred at 107½. The appraiser valued decedent's holdings of the preferred and common stock at these figures. Two witnesses testified that in their opinion the value of the preferred was $90 and the common $80 per share. There was no statement of the assets and liabilities of the company. The Appellate Division modified the order of the surrogate by reducing the value of the common to $100 per share and the preferred to $97.50 per share.

It is apparent from this decision that no definite rule by which the price of such securities could be ascertained was enunciated by the Appellate Division in that case. It is, however, distinguishable from the matter under consideration in the fact that it was a small corporation capitalized at $1,500,000, and controlled by one family, while the Singer Manufacturing Company was at the time of decedent's death capitalized at $30,000,000, and in the further fact that the stock of the Singer Manufacturing Company is customarily bought and sold in the open market. The allegation in the affidavit of John S. Stanton that the attempt to dispose of 1,208 shares of the Singer Manufacturing Company stock at the date of decedent's death would cause a material reduction in the price should not be considered by the appraiser in estimating the fair market value of this stock at the date of decedent's death. Matter of Gould, 19 App. Div. 352, 46 N. Y. Supp. 506; Matter of Proctor, 41 Misc. Rep. 79, 83 N. Y. Supp. 643; Matter of Kennedy, N. Y. Law Jour. March 8, 1911.

Adopting the rule that the average price of this comparatively in-

active security for three months before and three months after decedent's death would represent its fair market value upon the date of decedent's death, it would appear that the total number of sales made during that time, according to the affidavits of George F. Martin and John S. Stanton, were 28 shares at an aggregate value of $13,432. This would represent an average price of $480 per share. The appraiser having appraised the 1,208 shares of Singer Manufacturing Company stock held by the decedent at $481 per share, his report should be corrected by appraising these shares at $480.

[3] As the value of the temporary life estate of decedent's son in the entire estate must be ascertained by the state superintendent of insurance, the order fixing tax cannot be modified by the surrogate upon this appeal, but the appraiser's report should be remitted to him for correction as indicated, and for the further purpose of ascertaining the value of the temporary life estate of decedent's son in the entire estate as shown by the appraiser's corrected report.