Rex D. Sheldon, Respondent, v. Argos Mercantile Corporation, Appellant.

First Department, December 24, 1920.

Sales — action to recover for alleged breach of contract by buyer in failing to furnish letter of credit — attempt of seller to resell goods to third parties after market value had increased — voluntary rescission of contract to sell — failure to establish damages — loss incurred by seller on resale not chargeable to purchaser under original contract to purchase — erroneous charge as to measure of damages.

Where the defendant agreed through the plaintiff's agent to purchase a quantity of sugar at a certain price and to secure payment by an irrevocable letter of credit but failed to furnish said letter of credit because the plaintiff through his agents demanded a large cash payment in addition, and it appears that thereafter the plaintiff, having obtained a government permit to ship the sugar to a foreign country, entered into an agreement with a third person at a time when the price of the sugar had advanced beyond the price the defendant was to pay to finance a joint adventure to ship the sugar to France and some of it was lost in transit, the plaintiff is not entitled to recover, for he has failed to establish any damage, as he entered into a speculative venture to sell to other persons after the market value had increased, and, in any event, the defendant is not liable for losses suffered by the plaintiff in carrying out said venture.

Held, on all the evidence, that the contract with the defendant was mutually regarded as a mere option which was mutually rescinded when the plaintiff attempted to sell the goods at an increased price to others.

Charge as to measure of damages examined, and held, to constitute reversible error.

Appeal by the defendant, Argos Mercantile Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of April, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of April, 1920, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Andrew Foulds, Jr.,* of counsel [*William F. Ashley, Jr.,* with him on the brief], *Ashley, Foulds & Galland,* attorneys, for the appellant.

*Harold G. Aron* of counsel [*Laura B. Lewis* with him on the brief], *Aron & Wise,* attorneys, for the respondent.

MERRELL, J.:

The action is brought to recover damages for the alleged breach of a contract for the sale of 2,000 tons of sugar. The contract in question is alleged to have been made on the 30th day of August, 1919, and is evidenced by a letter written by the the defendant to Messrs. B. A. Kueckler Company, plaintiff's brokers, under the above date, which letter reads as follows.

                              "NEW YORK, *Aug.* 30, 1919.

" Messrs. B. A. KUECKLER Co.,
                    " 130 Pearl St.,
                    " New York City:

" GENTLEMEN.— We hereby confirm our agreement of August 29th, to purchase through you from Mr. R. D. Sheldon, 366 Lexington Ave., New York City, 2,000 tons of Extra Turbinated Sugar at $10.60 f.o.b. Havana, Cuba, delivery before October 31, 1919, confirmed, irrevocable credit for which has to be established not later than closing of banking hours, September 10, 1919.                    Yours very truly,

          " ARGOS  MERCANTILE  CORP.,
                    " (Signed) M. E. HIDDEN,
                              " *Vice-President.*"

The answer admits the making of the agreement set forth in the complaint.

After setting forth the agreement, the complaint alleges that the plaintiff has duly performed all of the conditions of the contract, " except insofar as prevented therefrom by the defendant, and defendant's refusal to accept the merchandise described in said contract," and that " defendant has wholly failed and neglected and refused to accept the merchandise described in the said contract annexed hereto and marked Plaintiff's Exhibit A, and to pay therefor, and has likewise failed, neglected and refused to establish the credit, as required by the terms of said contract."

Upon the opening of the trial, defendant's counsel moved to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The motion was denied, and the appellant now claims that such denial was error. While the complaint is certainly open to criticism, the appellant raises no objection, except that it fails to allege

a consideration for the defendant's agreement therein set forth, and that such agreement is unilateral. Such objection I think, is not well founded, and the trial court was justified in denying defendant's motion to dismiss.

The facts material to the determination of the issue are as follows: The plaintiff, Rex D. Sheldon, at the time the contract was made, was operating in the Cuban sugar market, and testified that he had so operated for a period of two or three months. He was in Havana at the time, and in this transaction was represented in New York city by the aforesaid firm of brokers, B. A. Kueckler Company. The plaintiff claims that at the time the agreement was made he had an option or some other arrangement of a like nature for the purchase of the sugar in question with a Cuban firm known as Galban, Lobo & Co. The arrangement which plaintiff had with such company is claimed to have dated back to the early days of August. Prior to August thirtieth plaintiff obtained a permit or license from the United States Equalization Board to ship 2,000 tons of sugar from Havana to France. While the original permit was not placed in evidence, plaintiff was allowed to testify that he had the aforesaid arrangement with Galban, Lobo & Co., and that he held the aforesaid permit. On August 26, 1919, a letter was written to the plaintiff's brokers by a representative of the Royal Bank of Canada, which is as follows:

" Agency of
" THE ROYAL BANK OF CANADA
" Incorporated 1869.
" Corner William & Cedar Streets.
" NEW YORK, *August* 26, **1919.**
" MESSRS. B. A. KUECKLER & COMPANY,
" 130 Pearl Street,
" New York City:

" GENTLEMEN.— We beg to advise that we have received the following telegram from our Havana Branch:

" Please inform Raymond Trigger pursuant to his cable to Sheldon we hold letter from Equalization Board, Cuban Committee, reading as follows: ' At the request of Mr. Sheldon we hereby state that acting under instructions of the United States Sugar Equalization Board, Inc., we are willing to sell him in Havana 2,000 tons turbinated sugar extra of Central

Providencia turbinated by the Cia Azucarera de Guines at the price of          f.o.b. steamer Havana, Messrs. Galban Lobo & Co. will deliver the sugar collecting same under the terms of cash. Opening confirmed Banker's Credit favor of Messrs. Galban Lobo & Co. before the· expiration of this option expires August 30th, 1919. We will permit shipment of this sugar from Havana to any port in France at the buyer's option. Shipment to take place from now to the end of October. Above mentioned price to be understood ———— net for the sellers Messrs. Galban Lobo and Co. and ———— accruing to the United States Sugar Equalization Board, Inc.'

"Please note that we quote the above without any responsibility whatever to this Bank.

"Yours truly,<br>"B. ANDERSON,<br>"Pro-Agent."

It is to be noted that nowhere in this letter is the price of the sugar set forth, a blank space being left. The plaintiff testified that the price was intentionally left blank. After receiving the above letter a representative of the B. A. Kueckler Company took the matter up with the defendant, and the aforesaid letter of August thirtieth confirming the understanding between the parties was written. At this time the plaintiff was still in Cuba, and personally had nothing whatever to do with the making of the contract, except certain instructions which he gave from time to time to his brokers. In the letter of August thirtieth the defendant agreed to establish irrevocable credit not later than the closing of banking hours on September tenth. The plaintiff contends that the defendant violated the contract by failing to establish credit as therein agreed. The defendant admitted that no such credit was established, but asserts that before the.tenth of September Kueckler and one Raymond Trigger, members of the aforesaid firm of brokers, both representing the plaintiff, called upon the defendant and demanded a cash payment of $50,000. It is admitted by both of these agents that such a demand was made. The defendant's officers testified that when the demand was so made and refused, the plaintiff's said agents stated that the deal was off, and that, for that reason, no

attempt was made by the defendant to establish the credit provided for in the contract. While the plaintiff's agents admit that they did demand the cash payment of $50,000 several days prior to the tenth of September, still both of these agents deny that they formally declared the contract to be at an end, but testified that they simply went to the defendant in a friendly manner in order to obtain such advance payment as an accommodation. The evidence clearly shows that the sugar in question was in great demand, and that the market was rising. Cablegrams from the plaintiff to his agents show that he desired to close the deal in Cuba for the sale of this same sugar and was awaiting the consummation of the transaction with the defendant with apparent reluctance. The plaintiff testified that the 2,000 tons of sugar in question was practically the only sugar then available for export, and could readily have been sold at Havana for a price from ten and one-half cents per pound to eleven cents per pound. The contract price was $10.60 per 100 pounds. And upon the plaintiff's own testimony he could have sold the sugar upon the date of the alleged breach in Havana, where the sugar was to be delivered, at a price exceeding that which the defendant agreed to pay. Upon this point the plaintiff's evidence is as follows: " Q. Now, you say that the market price of sugar in Cuba on September 10th was $10\frac{1}{2}$ or 11 cents a pound? A. Yes, sir. Q. And your contract with the defendant was to sell the sugar to them at 10.60, is that correct? A. To the Argos Mercantile? Q. Yes. A. It was. * * * Q. In other words, you could sell that sugar in Cuba on September 10th at 10.60, could you? A. I could. Q. No trouble about that? A. Yes, sir. Q. Why didn't you? A. Because I preferred to get financed and take it to France, for I thought I could make a better sale, the same as you had proposed."

While the plaintiff is now suing to recover large damages from the defendant, and has recovered the sum of $71,744.30 herein, on the date the contract is claimed to have been violated by defendant, at Havana, where the sugar was to be delivered f. o. b., the plaintiff could have sold the sugar, if he actually had it, for at least as much as the defendant agreed to pay. Instead of this the plaintiff, as he says, desired to speculate and entered into an arrangement with one Emilio

Lopez Vazquez, of Santiago, on September thirteenth, wherein the plaintiff assigned to Vazquez a two-thirds interest in his alleged contract for the sugar, Vazquez agreeing to finance the enterprise and the parties agreeing to share the profits, Vazquez to receive two-thirds and the plaintiff one-third. The sugar was to be shipped to France in accordance with the permit and there sold, and, as admitted by the plaintiff, large profits were expected to result. The permit under which this sugar was shipped is dated September fifteenth and is claimed to be a renewal of a prior permit. The venture thus undertaken partially failed on account of the loss at sea of a part of the sugar which was shipped upon the steamship *Venetia*, and the damages which plaintiff has recovered are the direct result of such failure. The court permitted the plaintiff to testify that he had made the arrangement to purchase the sugar in question for $8.52½ per 100. Under the contract with the defendant the plaintiff was to receive $10.60 per 100. The profit which the plaintiff says he expected to relize upon the sale to the defendant was, therefore, $96,637. The plaintiff claims that because of the loss of the steamship *Venetia* and by reason of the assignment of two-thirds of the contract, he has realized only $24,992 or thereabouts as *profits* from the venture which he entered into with Vazquez, and that the defendant should pay the difference. The plaintiff also claims that he spent large sums of money in hotel bills, cables and traveling expenses incident and necessary to marketing the sugar, and that the minimum of such bills and charges amounted to the sum of $3,750. The court charged the jury that if the plaintiff was entitled to recover any sum whatever it must be the sum of $71,744.30, and that if the jury believed the plaintiff's testimony in respect to the aforesaid expenditures, the jury might also find additional damages in the sum of $3,750.

The appellant contends not only that the complaint should have been dismissed, as above stated, at the opening of the trial, but should have been dismissed at the close of all of the evidence for lack of any proof of damages, and also that the trial court erred in submitting the wrong measure of damages to the jury and in the reception of incompetent evidence.

The complaint was an ordinary complaint for the breach

of a contract for the sale of goods, and while the alleged breach of such contract consisted of the failure of the defendant to establish credit, which breach the plaintiff immediately seized upon as an excuse for himself entering into a speculative contract with Vazquez, the measure of the plaintiff's damage was the difference between the contract price and the market value of the merchandise at the time and place of delivery. As there was a market for the sugar upon the date when the contract is alleged to have been broken, at a price above the contract price, and as such market continued for a long period of time thereafter, during which period the plaintiff was holding the sugar, speculating upon it, and endeavoring to sell it in France at a large profit, the plaintiff clearly assumed every risk which was attached to so holding and selling the sugar. Plaintiff was bound to use reasonable diligence in disposing of the sugar so that he would be damaged as little as possible. The joint venture upon which plaintiff embarked with Vazquez was not a sale for the benefit of the defendant. The jury seems to have believed, I think, against the preponderance of the evidence, the plaintiff's witnesses respecting the breach of the contract on the part of the defendant, still that the plaintiff entirely failed by competent evidence to show any damages.

As above stated, after the plaintiff had entered into his arrangement with Vazquez, the sugar was placed upon shipboard and was sold in France at thirteen cents per pound, which would have netted the plaintiff and Vazquez a profit of two and four-tenths cents per pound over defendant's contract, had all of the sugar reached France. As it was, that part of the sugar which reached France was sold for $289,755.60. The total insurance received on the lost cargo, above actual outlay, was $22,000, leaving the total amount realized by the plaintiff and Vazquez $311,755.60. Had the ship *Venetia* reached France, the proceeds of her cargo of 976 tons would have been $284,211.20. This would have made a grand total of $573,966.80, as against the sum of $494,172, which the plaintiff hoped to realize out of the contract which he claims to have made with the defendant. The plaintiff does not give the defendant credit for the $311,755.60 actually realized for the sugar, but asserts, and the court has

held, that on account of his assigning a two-thirds interest to Vazquez, he is entitled to recover the total amount of profit which he might have realized had the defendant carried out its contract of August thirtieth, less only the *one-third* share in the profits of the new enterprise which plaintiff actually received.  Upon the same theory, had plaintiff assigned nine-tenths of his so-called sugar rights, instead of one-third, credit would have been given for only one-tenth of the profits realized on the new venture.  Plaintiff's counsel admitted upon the trial that it was necessary for the plaintiff to prove the market value of the sugar, which, as above shown, was necessary in order for the plaintiff to establish any damages at all.  Such admission was as follows: " The Court: Are you going to show the market value?  Mr. Aron: Yes, sir.  I have got to do that."  Instead, however, of confining the evidence to the true measure of damages, the court permitted in evidence the aforesaid contract made between the plaintiff and Vazquez, as well as testimony respecting the aforesaid arrangement between Galban, Lobo & Co., and all of the aforesaid evidence relating to the joint venture engaged in by the plaintiff and Vazquez.  All of such evidence was, of course, incompetent, and was admitted over the objection of defendant's counsel.  When it came to the proof of the so-called special damages, the court, over defendant's objection, permitted the plaintiff to make general statements in regard to the money which he spent in cables, hotel bills and other expenses.  The plaintiff admitted that he had made no account whatever of such expenses and he did not attempt to testify respecting any particular item or items, the court stating: " *Let him state the minimum amount which he paid.*"  And although the defendant's counsel objected to this manner of proof, the court permitted the witness to testify in lump sums to his hotel expenses, traveling expenses and cable charges, which, the plaintiff stated, amounted in all to $3,750, not a single item of expenditure being stated.  While the jury discarded this evidence, it is important as disclosing one of the many errors which make up the record, and which resulted in the enormous verdict ▲ the plaintiff.

From a careful reading of the evidence ▲ pparent that neither of the contracting parties consi▲d that the contract

First Department, December, 1920.    [Vol. 194.

was in effect after the tenth of September, and it is clear that the plaintiff was glad to be relieved from it, made exorbitant demands upon the defendant, and at the first opportunity, and three days after the alleged breach, entered into the contract with Vazquez. Moreover, the parties seemed to regard this contract as a mere option which had expired. Two officers of the defendant testified that after the sugar had been shipped to France, the plaintiff called upon them, and again offered the defendant the sugar then in transit, but at an increased price, and the plaintiff admits having called upon the defendant and of telling it of the joint venture, that the sugar was on shipboard on the way to France to be sold, and that he would still let the defendant have it if it desired, as the defendant says, at an increased price. During this time no demand of the defendant was made in any way by the plaintiff, and it was not until after the sinking of the *Venetia* that the plaintiff seems to have first thought of bringing this action to recover damages.

At the close of the trial both sides moved for a directed verdict, and the defendant moved to dismiss the complaint. These motions were denied, and the court proceeded to charge the jury. On the measure of damages nothing was said about market value, and the jury was instructed " that the measure of damages, if you find for the plaintiff, is the difference between what you find the plaintiff paid for that sugar which he testified that he had or had contracted for and the price which the defendant promised to pay for it under the contract. That difference, with the credits which the plaintiff allowed the defendant through his selling of the sugar afterwards, is $71,744.30, so if you find a verdict for the plaintiff at all you must find a verdict for at least $71,744.30." Such charge of the court was clearly incorrect and was duly excepted to by counsel for the defendant. (Pers. Prop. Law, § 145, as added by Laws of 1911, chap. 571; *Windmuller* v. *Pope*, 107 N. Y. 674; *Wyllys Co.* v. *Nixon*, 165 App. Div. 375; *Dana* v. *Fiedler*, 12 N. Y. 40; *O'Gara* v. *Ellsworth*, 85 App. Div. 216.) The jury was not permitted to pass upon any question of market value. Defendant's counsel requested the court to charge as follows: I respectfully request your Honor to charge that if the jury should find as a question of fact that

the defendant had breached the contract that the damages allowed to the plaintiff should be the difference between the contract price and the market price at the time and place of delivery." The court declined to so charge. This, I believe, was also reversible error, under the authorities above cited.

The jury came into court several times and asked for instructions, and each time was told in substance that if they believed the testimony of the plaintiff their verdict must be for the plaintiff in the sum of $71,744.30. Upon one occasion the foreman stated that the jury could not agree upon any verdict. The court again instructed the jury that he had fully admonished them that if they found for the plaintiff but one verdict was proper. The foreman of the jury thereupon asked the court if the jury was obliged to find damages, thus showing an inclination of the jury to find in favor of the defendant. The court answered that he had already fully instructed the jury upon that subject. The jury then brought in the verdict which resulted in the judgment appealed from.

The judgment appealed from must be reversed. From the plaintiff's own testimony no damages were suffered. While there was a question of fact for the jury respecting the breach of the contract by the defendant, still the plaintiff absolutely failed to establish damages by any competent proof, and under his own testimony the market value of the sugar at Havana upon the date of the alleged breach and for a long period of time thereafter was at least equal to the contract price, and the sugar was thereafter sold in France by the plaintiff and his coadventurer for two dollars and forty cents per 100 over the price fixed in the contract with the defendant. Clearly the defendant cannot be called upon to respond in damages for the failure of plaintiff's speculations. The trial court should have dismissed the complaint at the close of the evidence, upon the motion of the defendant's counsel.

The judgment and order appealed from should be reversed and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.